**FILED**

September 30, 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ **JW**

DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| DANIEL BURNS, | § | |
| | § | |
| v. | § | NO. 3:24-CV-00273-LE |
| | § | |
| LELAND DUDEK, ACTING | § | |
| COMMISSIONER OF | § | |
| SOCIAL SECURITY ADMINISTRATION | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is a civil action seeking judicial review of an administrative decision by the Social Security Administration (SSA). Pursuant to 42 U.S.C. § 405(g), Plaintiff Daniel Burns, the claimant at the administrative level, appeals from the final decision of Defendant Leland Dudek, the SSA's Acting Commissioner, partially denying his claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq. The parties consented to the magistrate judge conducting all proceedings, including the entry of final judgment. For the reasons that follow, the SSA's Acting Commissioner's decision is **AFFIRMED.**

## I.    BACKGROUND

On April 19, 2022, Burns applied for Social Security benefits alleging that he became disabled as of March 11, 2022[1], due to physical and mental impairments including ankle, wrist, neck, back, elbow, and shoulder pain.[2]  He was fifty-two years old when he applied for benefits.[3]  He has at least a high school education.[4]  Previously, he worked as a truck driver, an administrative clerk, and a tax preparer.[5]

---

[1] Tr. of Admin. R. [hereinafter cited as "Tr"] at 21.
[2] *Id*.at 289.
[3] *Id*.at 35.
[4] *Id*.
[5] *Id*. at 34, 66.

After his claims were denied initially on February 28, 2023 and upon reconsideration on May 9, 2023, Burns requested a hearing by an administrative law judge.[6] April 11, 2024, ALJ Michael Leppala (ALJ) held a hearing, where Burns appeared with attorney representatives.[7]  On May 20, 2024, the ALJ issued his written decision in which he partially denied Burn's application finding that he was not disabled before May 9, 2024.[8]  Burns was declared disabled but the ruling of the ALJ was that the disability began on May 9, 2024 and not on March 11, 2022, the date of Plaintiff's claimed onset of disability.[9] On June 24, 2024, the Appeals Council denied Burn's request for review of the ALJ's decision;[10] the ALJ's decision thus became the final decision of the Commissioner.[11]

## II.    STANDARDS FOR DETERMINING DISABILITY AND ALJ'S FINDINGS

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In determining disability, the ALJ evaluates the following five-step sequential evaluation process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medical determinable impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *See Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017); *see also* 20 C.F.R. § 404.1520(a)(4). "The burden of proof is on the

---

[6] *Id*.at 21.
[7] *Id.*
[8] *Id*.at 21-37.
[9] *Id.*
[10] *Id*.at 7-10.
[11] *Id.*

claimant at the first four steps," *Kneeland*, 850 F. 3d at 753. If the claimant meets this burden, at step five, the burden shifts to the Commissioner to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021).

Between step three and four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his or her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.*; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). The RFC assists in determining whether the claimant can do past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, the ALJ evaluated Burn's disability claims pursuant to the abovementioned sequential evaluation process. At step one, the ALJ found that Burns had not engaged in substantial gainful activity since March 11, 2022, his alleged disability onset date.[12] At step two, the ALJ found that Burns had the following severe impairments: degenerative disc disease, neuropathy, right wrist tendonitis, obesity, right ankle calcaneal spur, left knee degenerative disc disease, traumatic brain injury, anxiety, and depression.[13] At step three, the ALJ found that Burns did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments for disability.[14] Next, the ALJ found that Burns has the residual functional capacity to perform light work except he is capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds hazardous machinery, standing and/or walking for about six hours in an eight-hour workday, and sitting for about six

---

[12] *Id.* at 23.
[13] *Id.*

[14] *Id.* at 24.

hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds, occasionally balancing, stooping, crouching, kneeling, crawling, using foot controls, and frequently reaching with their right upper extremity. He must avoid all exposure to hazards. He can understand, carry out, and remember simple and detailed, but not complex, instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with occasional changes in work setting, and maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to occasional interaction with the general public.[15]

The ALJ found that since March 11, 2022, Burns could not perform past relevant work.[16] Prior to the established disability onset date, the claimant was closely approaching advanced age.[17] Beginning on May 9, 2024, Burns could not transfer job skills to other occupations.[18] Prior to the date of the decision, there were jobs that existed in significant numbers that Burns could have performed.[19] Beginning in the date of the decision, Burns's age category changed and there are no jobs that exist in significant numbers.[20] Burns was not disabled prior to the date of the ALJ decision but became disabled on that date and has continued to be disabled.[21]

### III.    APPLICABLE LEGAL STANDARDS

This Court's review of the Commissioner's decision is limited to two issues: (1) whether the final decision is supported by substantial evidence on the record as a whole and (2) whether

---

[15] *Id.* at 27.
[16] *Id.* at 34.
[17] *Id.* at 35.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 36.
[21] *Id.*

the Commissioner applied the proper legal standards to evaluate the evidence. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). Substantial evidence is more than a scintilla, less than a preponderance, and is sufficient for a reasonable mind to accept as support for a conclusion. *See Id.*

In applying the "substantial evidence" standard, the court may not reweigh the issues or try the issues *de novo*. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez v. Charter*, 64 F.3d 172, 173 (5th Cir. 1995)(per curiam).

## IV.    DISCUSSION AND ANALYSIS

Burns alleges that the Commissioner erred as a matter of law because he (1) failed to adequately assess the supportability and consistency of the medical opinions of Dr. Patricia Nicol and Dr. Alison Caviness; (2) failed to reconcile the differing medical opinions of Dr. Patricia Nicol and Dr. Alison Caviness; and (3) failed to adequately assess the Plaintiff's need for an assistive device due to balance and not only ambulation.[22]

### A.    The ALJ made a proper RFC Determination

The ALJ must properly analyze the medical evidence to determine the claimant's ability to work. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). The ALJ must determine the RFC

---

[22] Pl.'s Br. at 8, ECF No. 9.

and is required to determine if the medical opinions provided are persuasive or unpersuasive. *Id.* *See also,* 20 C.F.R. §§ 416.920c, 416.945.

The ALJ assesses the RFC based on all the relevant medical and other evidence. *See* 20 C.F.R. § 404.1545(a)(3). When evaluating physical limitations, the ALJ will "first assess the nature and extent of the physical limitations and then determine the residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(b). The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). An ALJ evaluates the persuasiveness of medical opinions and prior administrative medical findings using multiple factors, the most important of which are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). An ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Garcia v. Berryhill*, 880 F.3d 700, 705 n.7 (5th Cir. 2018) (citation omitted).

The ALJ reviewed all of the relevant evidence and found Drs. Patricia Nicol and Alison Caviness state agency reviewer's opinions largely persuasive.[23] Specifically, the ALJ stated that they found claimant to be capable of light exertion noting that he could occasionally push and pull with the right upper extremity and occasionally reach in front and laterally, overhead, and handle. They note that the claimant could occasionally stoop, kneel, crouch, and crawl and that he could frequently balance and climb ladders, ropes, or scaffolds. They opined that the claimant could do unlimited climbing of ramps and stairs.[24] "Dr. Nicol opined that the claimant could stand and walk for 4 hours total and sit for 6 hours total in an 8-hour workday while Dr. Caviness noted that the claimant could stand and walk for 6 hours in an 8-hour workday and sit for 6 hours

---

[23] *Tr.* at 32.
[24] *Id.*

in an 8-hour workday."[25] The ALJ further explains, "I have included additional notations regarding postural movements and the use of foot controls as well as notations regarding exposure to hazards in recognition of the Claimant's right ankle and left knee condition and the potential for medication side effects. I note that the Claimant has exhibited normal strength and sensation and no joint swelling or effusion."[26]  The ALJ then states, "Based on the foregoing, I find the Claimant has the above residual functional capacity assessment, which is supported by the longitudinal treatment record, the effectiveness of the Claimant's treatment and medication regimen, as well as the opinions of the consultative examining physician and **State agency reviewers**. I reduced the Claimant's residual functional capacity in recognition of the Claimant's impairments. However, contrary to the Claimant's allegations, these impairments and the limitations arising therefrom do not preclude the performance of all work activity."[27]

Burns argues that the ALJ did not adequately evaluate the supportability and consistency of the state agency reviewers.[28] Burns further alleges that the ALJ discussed these state agency reports regarding the Plaintiff's physical limitations, but does not consider whether each doctor's objective medical evidence and supporting explanations, nor does it compare evidence from other medical and nonmedical sources.[29] The Court disagrees because the record demonstrates why the ALJ found the opinions persuasive. [30]

The ALJ is required to articulate "supportability" and "consistency" in his decision. *Id.* § 404.1520c(b)(2). "Supportability" means that a medical opinion is "more persuasive" when it is supported by relevant objective medical evidence and explanations provided by the same

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 34.
[28] Pl.'s Br. at 11.
[29] *Id.*
[30] Tr. at 32-34.

medical source. *Id.* § 404.1520c(c)(1). "Consistency" means that a medical opinion is "more persuasive" when it coincides "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). In other words, "supportability looks internally to the bases presented by the medical opinion itself" while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022). The ALJ is not required to follow formalistic rules in articulating its decision. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The ALJ's discussion of the persuasiveness of a medical opinion and the consistency and supportability factors is not confined to the specific discussion if the opinion itself but is considered in light of the entire RFC analysis and evidence. *See Teixeira v. Comm'r SSA* 2022 WL 3130859 at*9 n.15 (E.D. Tex. July 2022), report and recommendation adopted, 2022 WL 3107856 (E.D. Tex. Aug. 4, 2022) (ALJ assessment and articulation of consistency and supportability must be read in the full context of the RFC findings).

Even if the analysis was deficient and is error, "remand is warranted only if the ALJ's error was harmful." *Miller v. Kijakazi*, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)). Plaintiff has the burden to show prejudice or harm from the error. *Jones v. Astrue,* 691 F.3d 730, 734–35 (5th Cir. 2012). In this case, the ALJ did not fail to completely address the medical opinions requiring reversal.[31] Burns has not demonstrated that had the ALJ sufficiently explained the persuasiveness of Drs. Nicol and Caviness's opinions by "detailing supportability and consistency", he would have

---

[31] Pl.'s Br. at 8.

disregarded those opinions. Thus, the Court finds that any supposed error by the ALJ in failing to outline the supportability and consistency is harmless and does not call for remand.

### B.    The RFC Determination is Supported By Substantial Evidence

Burns argues that the ALJ substituted her own lay opinion for that of the medical experts.[32] There is no requirement that the ALJ adopt a specific physician's assessment when determining a claimant's RFC *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (per curiam). "[T]he ALJ cannot completely disregard medical testimony in making an RFC determination, . . . [but] the ALJ's decision need not mirror a medical opinion." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022). The ALJ has the "exclusive responsibility as the fact-finder to evaluate medical opinions . . . and decide whether they are supported by and consistent with the rest of the record." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 535 (M.D. Pa. 2019).

Burns complains that the ALJ found both the opinions of Drs. Nicol and Caviness largely persuasive but that both were actually different in that one opined that Plaintiff has six- hour standing and walking limitations while the other concluded that Plaintiff has four-hour standing and walking limitations.[33] As previously stated, the ALJ must properly analyze the medical evidence to determine the claimant's ability to work and to determine if they are persuasive. *Taylor*, 706 F.3d at 603 (5th Cir. 2012). Only the ALJ considers the conflicting medical opinions and decides the case. *See Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017) (per curiam).

Burns states that the Court needs to remand the case because it is impossible to determine why the ALJ chose the 6-hour standing and waking limitation versus the 4-hour to determine the

---

[32] *Id.* at 14.
[33] *Id.* at 15-16.

weight to be afforded to each.[34] This Court agrees with Defendant's interpretation stating "A fair reading of the ALJ's decision is that "the ALJ [was] properly interpreting the medical evidence to determine [Plaintiff's] capacity for work." *Taylor*, 706 F.3d at 603; *see also Johnson v. Colvin*, No. 3:14-CV-2278-D, 2015 WL 3513209, at *4 (N.D. Tex. June 4, 2015). Here, the ALJ's RFC finding based on all the evidence such as Plaintiff's extensive reported activities and not just the medical evidence, aligned more with SAMC Caviness's RFC finding and her less restrictive RFC assessment provides substantial evidence supporting the ALJ's decision."[35] When developing the RFC, the ALJ considered the medical evidence, medical opinions in the record, and the claimant's testimony as outlined above in the prior point of error. The Court concludes that there is substantial evidence to support the ALJ's decision on the RFC.

However, assuming the ALJ needed to be more specific on how she chose one opinion over the other, the issue would not result in a remand. Generally, where the Commissioner applies an incorrect legal standard in evaluating the evidence, they must reconsider the denial." *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989). However, legal error alone does not mandate reversal, and remand is appropriate if the error is harmful. *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 (5th Cir. Jan. 18, 2023) (per curiam) (unpublished) (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)); As the Fifth Circuit stated, "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). An error is harmless when "it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556

---

[34] *Id*. at 16.
[35] Def. B. at p. 11, ECF No. 17.

(5th Cir. 2021). The burden is on the plaintiff to show harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

In this case, Burns was declared disabled, and he continues to be disabled.[36] Burns was declared disabled but the ruling of the ALJ was that the disability began on May 9, 2024 and not on March 11, 2022, the date of Plaintiff's claimed onset of disability.[37] The only possible complaint is that the ALJ declared him disabled later that when he claimed to be disabled.[38] Burns is required to show that the ALJ distinctly outlining why he chose the 6-hour standing walking limitation versus the 4-hour limitation would have affected his date of disability. Burns briefs are void of any such arguments.[39] For that reason, the Court finds that any supposed error is harmless and does not require remand.

### C.    Plaintiff's Need for an Assistive Device Due to Balance and Ambulation was Adequately Assessed

Burns claims that the ALJ erred by failing to provide a narrative discussion as to whether Plaintiff requires an assistive device for balance, and not only for ambulation.[40] Burns argues that use of the medically required hand-held device may significantly erode the occupational base for a person who has to use such device.[41] He believes that the ALJ's decision that Plaintiff does not require an assisted device, resulting RFC not accounting for a cane, and the light exertion and unskilled jobs identified by the vocational expert are not supported by substantial evidence.[42]

The burden of proof of demonstrating that needing an assisted device was a medically determinable impairment is on Plaintiff, and it must be established by objective medical evidence

---

[36] Tr. at 36.
[37] *Id*.
[38] *Id*.
[39] *See* ECF Nos. 9 and 18.
[40] Pl.'s Br. at 18.
[41] *Id*.
[42] *Id*.

from an acceptable medical source. 20 C.F.R. § 416.921. "Objective medical evidence is medical signs, laboratory findings, or both." *Id.* § 404.1513(a)(1); *see also Id.* § 404.1502(g) The statute specifically states that the agency adjudicators "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.* § 404.1521. As the Fifth Circuit held in *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988), the ALJ must evaluate the credibility of the claimant's complaints in light of the full record and resolve any conflict between subjective allegations and objective medical findings. *Id*. The ALJ's evaluation of credibility is entitled to deference where it is based on substantial evidence and clearly explained. *Id.*

The ALJ determined that Plaintiff did "not require the use of a medically necessary cane to ambulate as he has been noted to walk with no assistance at exams and reported at the hearing that he has not been prescribed an ambulatory aid"[43] The ALJ cited Plaintiff's testimony that he had not been prescribed an ambulatory aid.[44] The ALJ considered all of the evidence, including that Plaintiff was observed to have a normal gait and walk without an assistive device, and his extensive reported activities.[45] Plaintiff argues "the ALJ did not expressly discuss any countervailing evidence regarding the Plaintiff's need for an assistive device for symptoms of imbalance."[46] Plaintiff claims "the ALJ did not expressly discuss any countervailing evidence regarding the Plaintiff's need for an assistive device for symptoms of imbalance." However, the ALJ fully addressed Plaintiff's extensive regular reported activities, including jumping on a

---

[43] Tr. at 32.
[44] *Id.* at 32, 59-60.
[45] *Id.* at 29-30.
[46] Pl.'s Br. at 21.

trampoline, walking for exercise, and playing dancing games, which all contradict his claimed need for an assistive device to balance.[47]

The ALJ cited Plaintiff's hearing testimony of only occasional use of an unprescribed cane.[48] For this reason and for the above stated reasons, the ALJ properly excluded the need to use a cane for any purpose from his hypothetical questions to the vocational expert and from the RFC assessment.[49] An ALJ need only incorporate into the hypothetical question those claimed disabilities supported by the evidence and recognized by the ALJ. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002).  The only issue is whether substantial evidence supports the ALJ's decision. As the Fifth Circuit has emphasized, the "task of weighing the evidence is the province of the ALJ." *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  For this reason, the Court finds that the ALJ's decision that Burns did not require the use of a medically necessary cane is supported by substantial evidence.

For the reasons stated above, the Court finds that the ALJ's decision was based on substantial evidence. Burns has not demonstrated that he suffered harmful errors or prejudice.

## V.    CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision is AFFIRMED.

So ORDERED and SIGNED this 30th day of September 2025.

_____
**LAURA ENRIQUEZ**
**UNITED STATES MAGISTRATE JUDGE**

---

[47] Tr. at 852-65, 984-88, and 1242-42.
[48] Tr. at 28, 59-60.
[49] Tr. at 27, 67.